IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

JASON CURTIS BROWN,

    Plaintiff,

v.                                          Case No. 3:11-cv-0251

STATE OF WEST VIRGINIA,

    Defendant.

**PROPOSED FINDINGS AND RECOMMENDATIONS**

Pending before the Court is the initial screening of Plaintiff's complaint filed pursuant to 42 U.S.C. § 1983 (Docket No. 1) and his Application to Proceed Without Prepayment of Fees and Costs (Docket No. 3). This matter is assigned to the Honorable Robert C. Chambers, United States District Judge, and by Standing Order has been referred to the undersigned United States Magistrate Judge for the submission of proposed findings of fact and recommendations for disposition pursuant to 28 U.S.C. § 636(b)(1)(B).

Plaintiff, Jason Curtis Brown ("Brown"), filed this complaint against the State of West Virginia on April 15, 2011. Brown alleges that he was unlawfully imprisoned by the defendant from April 13, 2009 through December 16, 2009 in violation of the rights guaranteed to him by the Fifth and Fourteenth Amendments to the United States Constitution. He seeks judgment in the amount of five million dollars. (Docket No. 1 at 4). For the reasons that follow, the undersigned **FINDS** that the complaint fails to state a claim upon which relief may be granted and, thus, **RECOMMENDS** that the

presiding District Judge dismiss the complaint, with prejudice, and remove it from the docket of the Court.

I. **Relevant History**

On April 14, 2003, Brown was arrested on a complaint pending in the Circuit Court of Cabell County, West Virginia charging him with First Degree Murder.[1] Probable cause was found to support the complaint; accordingly, Brown was placed in state custody awaiting indictment. Prior to an indictment on the murder charge, Brown was indicted by a Federal Grand Jury on charges of drug trafficking. On June 30, 2003, while still in state custody, Brown pled guilty to one count of the federal indictment and was convicted of Aiding and Abetting the Distribution of Cocaine Base. On September 2, 2003, the Honorable Robert C. Chambers, United States District Judge, sentenced Brown to 36 months in a federal correctional institution. Seventeen days later, a Cabell County Grand Jury indicted Brown on charges related to the First Degree Murder complaint. Brown remained in state custody pending trial on the state indictment.

On April 8, 2005, Brown pled guilty to the lesser included offense of Second Degree Murder. The Honorable Dan O'Hanlon, Judge of the Circuit Court of Cabell County, sentenced Brown to twenty-five years of imprisonment to run concurrently with his federal sentence. Brown was given 724 days of credit for the time he had spent in state custody since his April 2003 arrest. He was sent to the West Virginia Penitentiary in Mount Olive and began serving his state sentence.

---

[1] Much of the relevant history is obtained from a federal habeas proceeding styled *Jason C. Brown v. State of West Virginia*, Case No. 2:09-cv-00172, which was filed in the United States District Court for the Southern District of West Virginia on February 23, 2009 and dismissed on October 15, 2010.

In August 2005, Brown filed a motion to reconsider his sentence in Cabell County Circuit Court. He contended that he had cooperated with the Prosecutor's Office and the Huntington Police Department and his assistance had proven pivotal in the state's ability to secure guilty pleas from Brown's co-defendants. Brown further argued that a reduction of sentence would effectively allow him to serve the remainder of his state sentence in the federal system as he still had to complete the thirty-six month sentence imposed by Judge Chambers. After considering the motion, Judge O'Hanlon reduced Brown's sentence to ten years. Apparently unanticipated by Judge O'Hanlon, the result of this reduction was to make Brown eligible for release from the state penitentiary on April 13, 2009, after serving only six years.

On April 9, 2009, upon learning that Brown was slated for release, the Cabell County Prosecuting Attorney ("PA") filed motions to stay Brown's release and to re-sentence him in conformance with his plea agreement. The PA argued that the original intent of the parties and the Court was to have Brown serve a total of ten to twelve and one half years in custody, with some of it in federal prison and some in state prison. Due to various misunderstandings of how the sentences would run, Judge O'Hanlon's reduction of Brown's sentence to ten years resulted in Brown serving less total time than originally intended. The PA asked the Court to re-sentence Brown to eighteen years, which would result in him serving nine years in state custody before spending three additional years in federal custody. Judge O'Hanlon granted the PA's motion and on May 1, 2009 re-sentenced Brown to eighteen years. Brown appealed the re-sentencing order to the Supreme Court of Appeals of West Virginia ("WVSCA").

During the course of the appeal, Brown and the State of West Virginia agreed that Judge O'Hanlon had erred in re-sentencing Brown. By joint motion, they requested an

order from the WVSCA reversing Judge O'Hanlon and compelling Brown's immediate release from state custody as he had fully discharged his sentence. The WVSCA granted the joint motion. On December 15, 2009, Judge O'Hanlon ordered the immediate release of Brown to federal custody to begin his thirty-six month sentence. Brown subsequently was released from federal custody on November 15, 2011.[2]

## II. <u>Standard of Review</u>

Pursuant to the provisions of 28 U.S.C. § 1915, the Court must screen each case in which an individual seeks to proceed *in forma pauperis* (without prepayment of fees and costs). The Court must dismiss the case, or any part of it, if the complaint is frivolous, malicious, fails to state a claim upon which relief may be granted, or "seeks monetary relief from a defendant who is immune from such relief." 28 U.S.C. § 1915.

A "frivolous" case has been defined as one which lacks "an arguable basis either in law or fact." *Neitzke v. Williams,* 490 U.S. 319, 325 (1989). A case lacks an arguable basis in law when it relies upon an indisputably meritless legal theory, *Anders v. California*, 386 U.S. 738, 744 (1967); *Denton v. Hernandez,* 504 U.S. 25 (1992). It lacks an arguable basis in fact when the supporting allegations describe "fantastic or delusional scenarios." *Neitzke,* 490 U.S. at 328. Similarly, a complaint fails to state a compensable claim when, upon viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp v. Twombly*, 550 U.S. 544, 570 (2007).

---

[2] Federal Bureau of Prisons Inmate Locator at www.bop.gov.

This Court is required to liberally construe *pro se* complaints, such as the one filed in this civil action. *Erickson v. Pardus,* 551 U.S. 89, 94 (2007). However, even under this less stringent standard, the complaint still must contain sufficient factual allegations to support a valid legal cause of action. The court may not rewrite the pleading to include claims that were never presented, *Parker v. Champion*, 148 F.3d 1219, 1222 (10th Cir. 1998), develop the plaintiff's legal theories for him, *Small v. Endicott,* 998 F.2d 411, 417-18 (7th Cir. 1993), or "conjure up questions never squarely presented" to the court. *Beaudett v. City of Hampton,* 775 F.2d 1274, 1278 (4th Cir. 1985).

Here, Brown alleges wrongdoing that entitles him to relief under 42 U.S.C. § 1983; accordingly, this Court must screen the complaint to determine if it states a valid claim against the named defendant under that section. Title 42 U.S.C. § 1983 provides as follows:

> Every person who under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress, except that in any action brought against a judicial officer for an act or omission taken in such officer's judicial capacity, injunctive relief shall not be granted unless a declaratory decree was violated or declaratory relief was unavailable.

Congress enacted § 1983 "to enforce provisions of the Fourteenth Amendment against those who carry a badge of authority of a State and represent it in some capacity, whether they act in accordance with their authority or misuse it." *Scheuer v. Rhodes,* 416 U.S. 232, 243 (1974), quoting *Monroe v. Pape,* 365 U.S. 167, 171-72 (1961). In order to state a cause of action under § 1983, a plaintiff must present facts showing that: (1) a

person (the defendant) deprived him or her of a federally protected civil right, privilege or immunity and (2) that the defendant did so under color of state law. *Perrin v. Nicholson*, 2010 U.S. Dist. LEXIS 105121, at *4 (D.S.C. 2010); *American Mfr. Mut. Ins. Co. v. Sullivan*, 526 U.S. 40, 50-52 (1999). If either of these elements is missing, the complaint fails to state a claim for relief under 42 U.S.C. § 1983. Moreover, a complaint that states plausible facts and accepted legal theories under § 1983 may nonetheless be subject to dismissal on initial screening if the defendant is immune from liability.

## III.  Analysis

Brown's complaint fails to state a claim because the State of West Virginia is not a "person" within the meaning of 42 U.S.C. § 1983. *Will v. Michigan Department of State Police,* 491 U.S. 58 (1989). In *Will,* the Supreme Court of the United States squarely addressed the question of whether Congress intended a State to be a "person" for purposes of § 1983 liability. The Court concluded that Congress did not envision the statute to include States as potential defendants, noting that the members of Congress who enacted § 1983 were familiar with common-law principles, including the doctrine of sovereign immunity, and would have explicitly stated in the statute the intent to "disregard the well-established immunity of a State from being sued without its consent." *Id.* at 67.[3] The Court observed that ordinary rules of statutory construction require Congress to make any alteration of the "usual constitutional balance between the

---

[3] The doctrine of sovereign immunity is encapsulated in the Eleventh Amendment to the United States Constitution, which provides "[t]he Judicial power of the United States shall not be construed to extend to any suit in law or equity, commenced or prosecuted against one of the United States by Citizens of another State, or by Citizens or Subjects of any Foreign State." U.S. Const. art. XI. Generally, the doctrine of sovereign immunity bars suit against a State unless (1) the State waives immunity; (2) Congress has abrogated a State's immunity under particular circumstances; or (3) the suit is directed against a state official and requests only prospective relief. *Noe v. West Virginia,* 2010 WL 3025561, at *4 (N.D.W.Va. July 29, 2010). None of these circumstances exist in the present action.

States and the Federal Government ... unmistakably clear in the language of the statute." *Id.* at 65, *citing Atascadero State Hospital v. Scanlon,* 473 U.S. 234, 242, 105 S.Ct. 3142, 3147, 87 L.Ed.2d 171 (1985). Reaffirming *Will* two years later, the Court explained that "interpreting the words '[e]very person' to exclude the States accorded with the most natural reading of the law, with its legislative history, and with the rule that Congress must clearly state its intention to alter 'the federal balance' when it seeks to do so." *Hafer v. Melo,* 502 U.S. 21, 26 (1991), citing *Will,* 491 U.S. at 65. Inasmuch as the State of West Virginia is not a person subject to suit under 42 U.S.C. § 1983 and, in additon, has sovereign immunity in this action, the undersigned proposes that the presiding District Judge **FIND** that Brown's complaint fails to state a compensable claim and, therefore, fails to survive this Court's initial screening.[4]

## IV.     Proposal and Recommendations

For the reasons stated, the undersigned respectfully **PROPOSES** that the District Court confirm and accept the foregoing findings and **RECOMMENDS** that:

1.     Plaintiff's § 1983 Complaint (Docket No. 1) be **DISMISSED**, with prejudice;

2.     Plaintiff's Application to Proceed Without Prepayment of Fees and Costs be **DENIED** (Docket No. 3) as moot; and

3.     This case be removed from the Court's docket.

Plaintiff is notified that this "Proposed Findings and Recommendations" is hereby **FILED**, and a copy will be submitted to the Honorable Robert C. Chambers,

---

[4] Even if Brown had named as defendants the two individuals arguably most responsible for entry of the order staying Brown's release, his complaint would not have survived the initial screening. Both Judge O'Hanlon and the PA are likewise immune from suit under the facts of this case pursuant to the doctrines of judicial immunity and prosecutorial immunity.

United States District Judge. Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Rules 6(d) and 72(b), Federal Rules of Civil Procedure, Plaintiff shall have fourteen days (filing of objections) and three days (mailing) from the date of filing this "Proposed Findings and Recommendations" within which to file with the Clerk of this Court, specific written objections, identifying the portions of the "Proposed Findings and Recommendations" to which objection is made and the basis of such objection. Extension of this time period may be granted by the presiding District Judge for good cause shown.

Failure to file written objections as set forth above shall constitute a waiver of *de novo* review by the District Court and a waiver of appellate review by the Circuit Court of Appeals. *Snyder v. Ridenour*, 889 F.2d 1363 (4th Cir. 1989); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984). Copies of such objections shall be provided to the opposing parties, Judge Chambers and Magistrate Judge Eifert.

The Clerk is instructed to provide a copy of this "Proposed Findings and Recommendations" to the petitioner, the respondents, and any counsel of record.

**FILED:** February 28, 2012.

Cheryl A. Eifert
United States Magistrate Judge